IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC BLANDING,<br><br>    *Plaintiff,*<br><br>v.<br><br>WALMART INC., et al.,<br><br>    *Defendants.* | CIVIL ACTION<br>NO. 23–5142 |

Pappert, J.                                           July 15, 2024

**MEMORANDUM**

  Eric Blanding sued UBesGoo Ltd. and Walmart Inc. in New Jersey state court under a myriad of product liability theories after he sat on a stool that broke and injured him. Walmart subsequently removed the case to the District of New Jersey. After two amended complaints, motions and letters, the District of New Jersey transferred the case to this Court. The Court subsequently determined that the case was transferred for want of jurisdiction in the District of New Jersey, that Pennsylvania's choice-of-law rules applied, and allowed Blanding to file a third amended complaint consistent with its ruling.

  After Blanding filed his Third Amended Complaint, UBesGoo moved to dismiss for lack of jurisdiction under Rules 12(b)(2) and failure to state a claim under 12(b)(6), and Walmart similarly moved to dismiss under Rule 12(b)(6). Blanding's response to UBesGoo's motion to dismiss for lack of personal jurisdiction also requested leave to engage in jurisdictional discovery.

1

Because Blanding's Third Amended Complaint is replete with conclusory statements and lacks detail, the Court dismisses all counts against Walmart. And while Blanding has failed to establish the Court's personal jurisdiction over UBesGoo, the Court grants Blanding leave to engage in jurisdictional discovery. After jurisdictional discovery concludes, Blanding may amend his complaint one last time.[1]

I

John Grayson purchased a "double drawer rolling kitchen cabinet storage cart with two stools." (TAC, First Count, ¶¶ 5–6, ECF No. 53.) In June of 2021, Blanding sat on one of Grayson's stools and it collapsed due to its "dangerous and defective condition," injuring Blanding. (*Id.* at ¶¶ 6, 13.)

Either UBesGoo or Walmart—Blanding does not specify which—"manufactured, sold, distributed and marketed" the cabinet-and-stool set. (*Id.* at ¶ 6.) Blanding claims that both UBesGoo and Walmart are licensed to do business in Philadelphia, Pennsylvania. (*Id.* at ¶¶ 2–3.)

---

[1] As a threshold matter, Blanding's responses to Walmart's and UBesGoo's motions to dismiss fall well below the requirements outlined in the Local Rules. *See* E.D. Pa. Local R. 7.1(c) (requiring that every motion be "accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion" and that the opposing party provide "a brief in opposition"); *See also Copenhaver v. Borough of Bernville*, 2003 U.S. Dist. LEXIS 1315, at *4 n. 1 (E.D. Pa. Jan. 9, 2003) ("Fully developed legal argument, citation to legal authority, and discussion of the relevant facts aid this Court in performing its duty, and ultimately in serving the ends of justice.")

Neither Blanding's Third Amended Complaint, nor his responses in opposition to UBesGoo's and Walmart's motions to dismiss, cite a single legal authority supporting his positions. *See generally,* (Mot. for Leave of Court to Engage in Jurisdictional Discovery, ECF No. 60; Resp. in Opp. to Motion to Dismiss, ECF No. 61).

II

UBesGoo moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) or, in the alternative, for failure to state a claim under Rule 12(b)(6). The Court considers UBesGoo's 12(b)(2) argument first because "'preliminary matters such as . . . personal jurisdiction . . . should be raised and disposed of before the court considers the merits or quasi-merits of a controversy.'" *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citing *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.,* 376 F.2d 543, 547 (3d Cir. 1967)).

A

To withstand a Rule 12(b)(2) motion, the "plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2004). Such a motion "is inherently a matter which requires resolution of factual issues outside the pleadings," *i.e.*, "whether *in personam* jurisdiction actually lies." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). But "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97.

Still, once the defense has been raised, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone." *Id.* at 101 n. 6 (citing *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990)). Indeed, the "plaintiff must

3

respond with actual proofs, not mere allegations." *Time Share Vacation Club*, 735 F.2d at 66 n.9.

B

Courts sitting in diversity apply the law of the forum state to determine whether jurisdiction is proper. Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute is co-extensive with the Due Process Clause of the Fourteenth Amendment. See 42 Pa. Cons. Stat. Ann. § 5322(b) (allowing courts to exercise personal jurisdiction over non-residents "to the fullest extent under the Constitution of the United States and may be based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States"); *see also Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment.") Accordingly, the Court's jurisdiction is proper so long as Defendants have "certain minimum contacts with Pennsylvania such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d 312, 316–17 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017). A court with general jurisdiction may hear any claim against a defendant, even if all the incidents underlying the claim occurred in a different state. *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). However, specific jurisdiction is "confined to adjudication of issues deriving

from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919). Each defendant's contacts with the forum state must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

1

"For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation [or formation]; and (2) the principal place of business." *Display Works, LLC v. Bartley,* 182 F. Supp. 166, 173 (D.N.J.) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)). General jurisdiction may also arise in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*, 571 U.S. at 139 n.19.

Courts have applied the *Daimler* rules to limited liability companies with "equal force." *Finn v. Great Plains Lending, LLC*, No. 15-4658, 2016 U.S. Dist. LEXIS 21558, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016) ("Although the language of *Daimler* speaks only in terms of corporations, the subsidiary at issue in Daimler was Mercedes-Benz USA, LLC ("MBUSA") . . . Even though MBUSA is an LLC, the Court looked to MBUSA's place of incorporation and principal place of business to determine whether it was essentially at home in California and thus subject to general jurisdiction in the State.")

Blanding does not meet his burden to establish UBesGoo is at home in Pennsylvania. He does not allege UBesGoo's citizenship or principal place of business. Instead, he states that UBesGoo "is a business entity, licensed to do business in the City and County of Philadelphia, Commonwealth of Pennsylvania, with an office for

process service at 1100 Cranbury South River Road, Monroe Twp., New Jersey." (TAC, First Count ¶3.)[2]

But UBesGoo presents evidence—a declaration from one of its managers—that it is a limited liability company under the laws of California with a principal place of business in Fujian, China.  (Huang Chen Decl., ECF No. 55–1.)  The declaration also states UBesGoo has never registered to do business in Pennsylvania or New Jersey.  (*Id.*)  Meanwhile, Blanding relies on bare pleadings—providing no jurisdictional facts offered through affidavits or other evidence—and does not counter UBesGoo's evidence, let alone make out a *prima facie* case.

2

i

Determining whether specific personal jurisdiction exists is "a three-part inquiry": (1) "the defendant must have purposefully directed its activities at the forum"; (2) the litigation must "arise out of or relate to at least one of those activities"; and (3) "the exercise of jurisdiction must otherwise comport with fair play and substantial justice."  *D'Jamoos v. Pilatus Aircraft, Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotations omitted).

In the context of online commercial activity, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), has become a "seminal authority" regarding

---

[2] On the issue of personal jurisdiction, neither Blanding nor UBesGoo reference the Supreme Court's decision in *Mallory v. Norfolk Southern Railway Co.*, in which the Supreme Court held that a Pennsylvania law requiring out-of-state companies that register to do business in Pennsylvania to agree to appear in Pennsylvania courts on "any cause of action" against them comports with the due process clause.  600 U.S. 122, 139 (2023).  Regardless, here Blanding fails to present a *prima facie* case that UBesGoo is licensed to do business in Pennsylvania.

personal jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). In *Zippo*, the court explained that the likelihood of exercising personal jurisdiction is based on a sliding scale approach. 952 F. Supp. at 1124. Where a defendant "clearly does business over the Internet" in the forum state and where the claim arises out of the use of the defendant's website, the court held that personal jurisdiction exists. *Toys "R" Us*, 318 F. 3d at 452 (citing *Zippo*, 952 F. Supp. at 1124). On the opposite side of the scale are situations in which the defendant simply posted information on a website accessible to users. *Zippo*, 952 F. Supp. at 1124. According to *Zippo*, such passive sites are not grounds for the exercise of personal jurisdiction. *Id*. The operation of a commercially interactive website, however, is not alone sufficient to establish personal jurisdiction. Rather, as the Third Circuit's standard articulates, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us*, 318 F.3d at 454.

ii

Blanding does not specify Walmart's or UBesGoo's relationship to the cabinet-and-stool set at issue, instead referring to "Defendants" throughout his pleading. But incorporating the exhibit that Blanding attaches in a supplemental filing, *see* (Exhibit A, ECF No. 61–2), the most favorable reading is that UBesGoo manufactures cabinet-and-stool sets and sells them—including the one sent to Grayson which Blanding later sat on—through Walmart's online store.

7

But even under this favorable reading of the complaint, Blanding fails to show that UBesGoo made purposeful contact with Pennsylvania. While UBesGoo, as a manufacturer and seller, would benefit from the nationwide market reach of Walmart, UBesGoo's use of a third-party website to facilitate sales does not satisfy the "purposeful availment" standard as required by *Toys "R" Us*. *See, e.g., Guidecraft, Inc. v. OJCommerce, LLC*, 2019 U.S. Dist. LEXIS 84471, 2019 WL 2373440 (W.D. Pa. May 20, 2019) (explaining that businesses using Amazon "glean customers thousands of miles away" but that "such reach does not meet the definition of 'purposeful availment'").

And even if UBesGoo knew or should have known that its cabinets and stools would end up in Pennsylvania through Walmart's sales, that expectation is insufficient to establish specific jurisdiction. Such an argument relies on the stream-of-commerce theory, which contends that specific jurisdiction exists when a defendant "has injected its goods into the forum state indirectly via the so-called stream of commerce," making it foreseeable that one of the defendant's goods will end up in the forum state. *D'Jamoos*, 566 F.3d at 104–105. But the Supreme Court has twice rejected the stream-of-commerce theory. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108–13 (1987) (plurality opinion)). Because "it is the defendant's actions, not [its] expectations, that empower a State's courts to subject him to judgment," it is not enough that UBesGoo might have predicted its cabinet-and-stool sets would reach Pennsylvania. *J. McIntyre*, 564 U.S. 873 at 882–83.

3

Blanding does not address UBesGoo's arguments in his response to the Motion to Dismiss; he points out instead that he has thrice amended his complaint (twice in the District of New Jersey and once before this Court) and subsequently asks the Court to allow for jurisdictional discovery before responding to UBesGoo, "in an effort to determine what contacts Defendant has with this Commonwealth." (Resp. in Opp. to Mot. to Dismiss Third Am. Compl., p. 2, ECF No. 60.)

In general, courts within the Third Circuit permit jurisdictional discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Additionally, the Third Circuit has instructed that "jurisdictional discovery [is] particularly appropriate where a defendant is a corporation." *Rocke v. Pebble Beach Co.*, 541 Fed. App'x. 208, 212 (3d Cir. 2013). Nonetheless, jurisdictional discovery is not warranted unless the plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state . . . .'" *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank*, 960 F.2d at 1223). Thus, a plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).

Although Blanding fails to allege sufficient facts to establish jurisdiction over UBesGoo, the Court cannot deem Blanding's complaint against UBesGoo frivolous. After conducting jurisdictional discovery, Blanding may be able to establish the Court's

personal jurisdiction over UBesGoo. *See, e.g., Seguro Medico, LLC v. Suffolk Admin. Servs., LLC*, 2024 U.S. Dist. LEXIS 69580, at *27 (E.D. Pa. Apr. 15, 2024) (holding that plaintiff did not meet its burden of establishing a *prima facie* case of personal jurisdiction but providing the opportunity to conduct jurisdictional discovery for a non-frivolous claim); *Dan Dee Int'l, LLC v. Glob. New Ventures Grp. LC.*, 2024 U.S. Dist. LEXIS 107836, at *21–23 (D. Del. June 18, 2024) (same). Accordingly, UBesGoo's motion to dismiss for lack of jurisdiction is denied without prejudice. UBesGoo may renew its motion after jurisdictional discovery is closed and Blanding has—if he chooses—filed a fourth amended complaint.

### III

Walmart moves to dismiss all Blanding's claims against it for failure to state a claim under 12(b)(6).[3] Blanding's claims—scattered across six separate counts—are vague and untethered from Pennsylvania law.[4] Insofar as the Court can make out

---

[3] In its motion to dismiss, Walmart cites to inconsistencies between Blanding's Third Amended Complaint and his previously filed complaints and "pre-motion letters" while the action was still in the District of New Jersey. *See, e.g.,* (Walmart Mot. to Dismiss, ¶¶ 32–76). But the Court only assesses Blanding's Third Amended Complaint—not earlier filings. *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 321 n. 43 (D.N.J. 2007) (omitting discussion of claims in the plaintiffs' previously filed complaint which were not reiterated, one way or another, since an amended complaint supersedes the previous complaint in "the sense that it constitutes waiver of claims in previous complaint").

[4] When parties agree on the substantive state law that applies, a court may assume—without conducting a choice-of-law analysis—that state's substantive law applies. *See USA Machinery Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999) ("Because the parties appear to be in agreement on [the choice-of-law] issue, we will assume, without deciding, that Pennsylvania law supplies the appropriate substantive rules.")
    Blanding does not cite any substantive state law, and he also does not object to the application of Pennsylvania law in either Walmart's or UBesGoo's Motion to Dismiss. Accordingly, the Court will presume the parties agree on the application of Pennsylvania law.

10

Blanding's individual claims, each one fails because the pleadings are woefully inadequate.[5]

A

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts from which the Court can infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Though this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* and *Iqbal* is a three-step process. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Step one is to "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675).  Next, the Court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, for all "well-pleaded factual allegations, the court should assume their veracity," draw all reasonable inferences from them "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 679).  If the well-pleaded

---

[5]  As a threshold argument, Walmart contends that all of Blanding's claims fail because the Third Amended Complaint lacks specificity and fails to provide "any identification of any Model Number, UPC, receipt of purchase, date of purchase, or any other information that would enable Walmart to identify the product and whether it sold said product." (Walmart Mot. to Dismiss, p. 41, ECF No. 54.)  Although the entirety of Blanding's Third Amended Complaint is insufficient, the Court will address each claim (that it can discern) one at a time.

facts do not nudge the "claims across the line from conceivable to plausible," the Court must dismiss the complaint. *Twombly*, 550 U.S. at 570.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). [6]

B

In the First and Second Count, Blanding alleges strict liability and negligence claims under a failure-to-warn theory. (TAC, First Count ¶¶ 11–12; TAC, Second Count ¶ 8.)

To state a strict liability claim under a failure-to-warn theory, Blanding must allege "only two things: that the product was sold in a defective condition 'unreasonably dangerous' to the user, and that the defect caused plaintiff's injury." *Philips v. A-Best*

---

[6] Blanding's response in opposition to Walmart's Motion to Dismiss includes a declaration from John Grayson, in which Grayson provides details about, *inter alia*, how he witnessed the stool's collapse, and the frequency with which he used the stool and tightened its screws. (Ex. B, Decl. of John Grayson, ECF No. 61–3.)

The Court will not consider Grayson's declaration in deciding Walmart's 12(b)(6) motion. The declaration provides new details which are neither "integral to" or "explicitly relied upon" in Blanding's Third Amended Complaint. And although Blanding attached Grayson's declaration to earlier versions of his complaint, those versions of the complaint are—as explained before—superseded by the Third Amended Complaint. *See supra* Section III.A. n. 5.

The Court considered exhibits attached in Blanding's responses when evaluating UBesGoo's Motion to Dismiss for lack of personal jurisdiction under 12(b)(2) because determining personal jurisdiction "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Considering a 12(b)(6) motion, however, does not invite those same considerations.

And even if the Court could consider Grayson's declaration without turning Walmart's motion into one for summary judgment under Rule 56, *see* Fed. R. Civ. Proc. 12(d), Blanding's Third Amended Complaint remains woefully inadequate to survive dismissal.

12

*Products Co.*, 665 A.2d 1167, 1170–71 (Pa. 1995) (quoting *Walton v. Avco. Corp.*, 610 A.2d 454, 458 (Pa. 1992)). A product is defective under a failure-to-warn theory "if it has an inadequate warning that made the product 'unreasonably dangerous.'" *White v. Stanley Black & Decker, Inc.*, 514 F. Supp. 3d 684, 697 (W.D. Pa. 2021) (quoting *Phillips,* 665 A.2d at 1171).

To state a negligence claim for failure to warn, Blanding must allege that the defendant "fail[ed] to exercise reasonable care to inform those for whose use the product is supplied of the facts which make it likely to be dangerous." *Baldino v. Castagna*, 478 A.2d 807, 810 (Pa. 1984). In a negligence claim, as opposed to a strict liability claim, Blanding must allege that the manufacturer was at fault. *See Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 741, 749 (W.D. Pa. 2004).

Whether sounding in strict liability or negligence, Blanding does not state a claim for failure to warn. He pleads no facts—only legal conclusions—about the inherent dangerousness of the product, the nature of the warnings accompanying the product, whether and how those warnings were unsafe or inadequate, or how he would have avoided the risk had he been warned.

C

Blanding also asserts strict liability and negligence claims under design defect and manufacturing defect theories. (TAC, First Count; TAC, Second and Fifth Count).

To state a strict liability claim due to a design defect, Blanding must allege "that the product is defective and that at the time it left the control of the manufacturer it lacked the feature necessary to make it safe for its intended use, or contained a feature that made it unsafe for its intended use." *CM Regent Ins. Co. v. CAMaster, Inc.*, No.

13

4:22-CV-205, 2022 U.S. Dist. LEXIS 226212, 2022 WL 17721589, at *5 (M.D. Pa. Dec. 15, 2022) (citing *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 339 (Pa. Super. Ct. 2014)). Similarly, to state a strict liability claim due to a manufacturing defect, Blanding must allege "what constitutes the manufacturing defect" and how the "manufacturing defect is a proximate cause" of the injury. *CM Regent Ins. Co.*, 2022 WL 17721589, at *5.

To state a negligent design claim, Blanding must allege that the defendant failed to exercise reasonable care in the adoption of a safe design. *Smith v. Howmedica Osteonics Corp*, 251 F. Supp. 3d 844, 853–54 (E.D. Pa. 2017). To state a negligent manufacturing claim, Blanding must "allege some facts that would plausibly suggest that the manufacturer failed to exercise a reasonable standard of care during the 'manufacturing process.'" *Id.* at 853 (citing Restatement (Second) of Torts § 395)).

Blanding fails to allege any strict liability or negligence claim due to either a design defect or manufacturing defect; he provides nothing more than conclusory statements that the cabinet-and-stool set was "in a defective condition and was unreasonably dangerous to users." (TAC, First Count ¶ 10); *see also* (TAC, Fifth Count ¶ 2.)

D

As part of the Third Count, Blanding also purports to assert a "failure to test" claim. But under Pennsylvania law, failure to test is not a standalone cause of action. *See Oddi v. Ford Motor Co.*, 234 F. 3d 136, 143–144 (3d Cir. 2000) (noting that Pennsylvania does not recognize an independent tort for "negligent failure to test" since the failure to test is part of "a routine products liability case based on negligence.")

14

E

In the Fourth Count of Blanding's Third Amended Complaint, he alleges "breach of warranty." (TAC, Fourth Count). But he does not specify whether he asserts a breach of an express or implied warranty—much less any details to make out either claim.

1

To state a claim for a breach of express warranty, Blanding must allege that a breach of warranty occurred and that the breach was the proximate cause of the specific damages sustained. *Samuel-Bassett v. Kia Motors Am. Inc.*, 613 Pa. 371, 428 (2011) (citing *Price v. Chevrolet Motor Div.*, 765 A.2d 800, 809 (Pa. Super. Ct. 2000)). Under Pennsylvania law, an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." 13 Pa. Con. Stat. § 2313(a)(1).

Blanding baldly alleges that the cabinet and stool "failed to meet the warranty and guarantees" provided to John Grayson (a third party to the suit) (TAC, Fourth Count ¶ 5). But Blanding provides no details regarding what those guarantees were or how he (not Grayson, who owned the stool) relied upon it.

2

Insofar as Blanding is asserting a breach of implied warranty—whether that be an implied warranty of merchantability or implied warranty of fitness for a particular purpose—he similarly fails to state a claim.

To state a claim for a breach of an implied warranty of merchantability, Blanding must allege that (1) the product malfunctioned; (2) that the plaintiff used the

15

product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes. *Chandler v. L'Oreal USA, Inc.* 340 F. Supp. 3d 551, 565 (W.D. Pa. 2018) (citing *Altronics of Bethleheme v. Repco, Inc.* 957 F.2d 1102, 1105 (3d Cir. 1992)).

To state a claim for a breach of an implied warranty of particular purpose, Blanding must allege that the seller had reason to know (1) of any particular purpose for which the goods were required; and (2) the buyer was relying on the skill or judgment of the seller to select or furnish suitable goods. *Gall v. Allegheny County Health Dep't,* 555 A.2d 786, 790 (Pa. 1989); *see also* 13 Pa. C.S.A. § 2315.

Blanding alleges no facts giving rise to an inference of a breach of an implied warranty of merchantability; he provides only conclusory statements about "breach of warranty." (TAC, Fourth Count ¶ 5). Blanding alleges no facts giving rise to an inference of an implied warranty of particular purpose, either; he alleges no purpose for which the table and stool set was required—much less that it was for a particular purpose—and no details for how either Walmart or UBesGoo provided any expertise or judgment when representing the purpose of the table and stool set.

F

In the Sixth Count, Blanding asserts a claim for negligent misrepresentation. To state such a claim, he must allege "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt-Rite Contractors, Inc. v.*

*The Architectural Studio,* 866 A.2d 270, 277 (Pa. 2005) (citing *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)).

But, again, Blanding offers nothing more than conclusory statements and vague allegations of negligent misrepresentation. He alleges that Defendants—not specifying which—"misrepresented the risks" of the table and stool set in their advertising and, and "suppressed" and "concealed" information about the risks to consumers. (TAC, Sixth Count ¶¶ 2–4.) But Blanding provides no specifics as to what information was misrepresented, and nothing about how Blanding might have been induced to act based on that information.

IV

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile*." Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The decision of whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Blanding may amend all claims against Walmart except his "failure to test" claim—which cannot be salvaged because it is not an independent cause of action. While Blanding has amended his complaint before, the Court has only considered his

most recent amended complaint after the case was transferred from New Jersey. Blanding will be given forty-five days to conduct jurisdictional discovery relating to UBesGoo, and another fifteen days after discovery ends to file an amended complaint— to the extent he can allege facts addressing the shortcomings identified in this Memorandum.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.